# EXHIBIT A

**MARDEN LAW, INC.**
Ryan K. Marden (SBN 217709)
18012 Cowan, Suite 200
Irvine, CA 92614
Tel: (714) 822-4450
Email: rmarden@marden-law.com

**MFS Legal Inc.**
Neal F. Morrow III (SBN 295497)
5318 East 2nd Street #490
Long Beach, CA 90803
Tel: (562) 307-8055
Email: lawclerk@calemonlawteam.com
Email: neal@calemonlawteam.com

Attorney for Plaintiff
BEVERLY P. CRAFT

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

11/17/2023 1:38 PM

By: Suzanne Trujillo, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BARNARDINO

BEVERLY P. CRAFT,

            Plaintiff,

    vs.

GENERAL MOTORS, LLC, a limited liability company: and DOES 1 through 10, inclusive,

          Defendants.

CASE NO.: CIVSB2330346

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

1. **VIOLATION OF SONG-BEVERLY ACT-BREACH OF EXPRESS WARRANTY**

2. **VIOLATION OF SONG-BEVERLY ACT-BREACH OF IMPLIED WARRANTY**

3. **VIOLATION OF SONG-BEVERLY ACT-SECTION 1793.2**

4. **FRAUD**

5. **VIOLATION OF BUSINESS & PROFESSIONS CODE 17200**

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

1

PLAINTIFF BEVERLY P. CRAFT (hereinafter referred to as "PLAINTIFF") hereby alleges as follows:

///

///

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION:**

1.  Plaintiff is an individual residing in the City of Norco, County of Riverside, and State of CALIFORNIA.

2.  PLAINTIFF is informed and believes, and thereon alleges, Defendant GENERAL MOTORS, LLC is registered to do business in the State of CALIFORNIA.

3.  Defendant is and was a limited liability company, doing business in the State of California.

4.  PLAINTIFF is informed and believes, and thereon alleges, that Defendant GENERAL MOTORS manufactured and/or distributed, in the United States and the State of California, a consumer good identified as a 2019 CHEVROLET BOLT, VIN: 1G1FY6S03K4118521 (hereinafter referred to as the "SUBJECT VEHICLE"), for its eventual sale to retail buyers.

5.  At all times mentioned herein, the SUBJECT VEHICLE was, and is, a "new motor vehicle" as defined at Civil Code§ 1793.22(e)(2) of the Song-Beverly Consumer Warranty Act, Civil Code §§ 1790 et seq. (hereinafter referred to as the "ACT"), in that said SUBJECT VEHICLE was a new motor vehicle purchased with the GENERAL MOTORS' new car warranty.

6.  On or about September 1, 2019, PLAINTIFF acquired the SUBJECT VEHICLE for personal, family, and/or household purposes, from Mary Christopher Auto Center, an authorized dealer and agent of GENERAL MOTORS. PLAINTIFF could not purchase the vehicle directly from GENERAL MOTORS as they do not sell vehicles directly to members of the general public. As part of the transaction, GENERAL MOTORS issued an express warranty which would only be issued by GENERAL MOTORS as a result of the sale of the vehicle. The sale of the vehicle by GENERAL MOTORS' dealership, coupled with the issuance of the warranty, created a transactional and contractual relationship between

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

2

GENERAL MOTORS and Plaintiff.  GENERAL MOTORS represents that it has 205 dealers in California (https://www.gm.com/company/usa-operations/california).GENERAL MOTORS' website does not state that the dealerships are not owned or operated by GENERAL MOTORS. The dealership is an agent of GENERAL MOTORS for purpose of the transaction.

7. The SUBJECT VEHICLE was sold to PLAINTIFF with express warranties that the SUBJECT VEHICLE would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the SUBJECT VEHICLE had defects, GENERAL MOTORS would repair the defects.  This included an 8-year, 100,000 mile warranty on the vehicle's battery.

8. GENERAL MOTORS impliedly warranted that the SUBJECT VEHICLE would be of the same quality as similar vehicles sold in the trade and that the SUBJECT VEHICLE would be fit for the ordinary purposes for which similar vehicles are used.

9. PLAINTIFF duly performed all the conditions on her part under the purchase contract and under each of the express warranties referenced above, except insofar as the acts and/or omissions of GENERAL MOTORS as hereinafter alleged, prevented and/or excused such performance.

10. On each occasion on which the SUBJECT VEHICLE exhibited defects, non- conformities, misadjustments, or malfunctions, as hereinabove described, PLAINTIFF notified GENERAL MOTORS, through or one of GENERAL

MOTORS' other authorized service and repair facilities, within a reasonable time after PLAINTIFF's discovery thereof.  On each occasion of notification, PLAINTIFF attempted to invoke the applicable warranties, demanding that the authorized repair facilities repair such nonconformities pursuant to the warranties.

11. Defendant failed to make the SUBJECT VEHICLE conform to the applicable warranties, despite a reasonable amount of time and a reasonable number of attempts to do so.

12. PLAINTIFF discovered that GENERAL MOTORS was unable or unwilling to make the SUBJECT VEHICLE conform to the applicable warranties.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

3

13.   Defendant GENERAL MOTORS falsely represented that the subject vehicle is safe and functional for normal use. However, the subject vehicle is not safe or functional because the batteries may ignite when they are either fully charged or fall below seventy (70) miles remaining mileage. The vehicle also cannot be parked inside overnight due to fire risk.

14.   In October 2015, General Motors announced partnership with LG to produce the Chevrolet Bolt and touted the vehicle as an affordable, long range vehicle.

15.   In a press release in January 2016, General Motors said the Bolt will have a battery range over 200 miles because of the use of a battery with improved thermal operating performance. The mileage representation was made absent any reference to the EPA estimated mileage range.

16.   However, in December 2016, General Motors first became aware of issues with the battery in the Bolt. As a result of issues with the battery and energy management related issues, General Motors instituted a Bolt EV High Voltage Battery Exchange and Internal Parts Process to replace defective batteries.

17.   Despite this knowledge, General Motors began running commercials in January 2017 featuring the range of the Bolt's battery. The Bolt was marketed as a "long range" and "affordable" vehicle.

18.   In October 2017, NHTSA published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition.

19.   In November 2017, General Motors created a repair program for the Bolt in response to findings of issues with low voltage in the batteries.

20.   In April 2018, General Motors created another program to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion.

21.   In May 2018, General Motors again notified its dealers regarding issues with the batteries in the Bolt.

22.   In August 2018, General Motors created another program related to the battery's software and its ability to monitor the charge of the battery.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

23. In March 2019, General Motors became aware of the first battery fire involving the Chevrolet Bolt. All of this occurred prior to Plaintiffs' purchase of the subject vehicle and its evidence of General Motors' knowledge of the defect in the subject battery. However, at no time prior to the sale of the subject vehicle did General Motors disclose the battery issues to Plaintiff or alter its marketing campaign with respect to the subject vehicle.

24. Despite the foregoing, in October 2019, General Motors made Adam Piper, a GENERAL MOTORS employee and Bolt battery expert, available to answer questions regarding the Chevy Bolt. Mr. Piper, on behalf of GENERAL MOTORS, stated: "We engineered the battery system so that you can charge to 100% and maximize range. Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%." As this was an event conducted by GENERAL MOTORS, Mr. Piper was authorized to speak on behalf of GENERAL MOTORS and made the statements on their behalf. Mr. Piper's statement was made despite GENERAL MOTORS' knowledge of the fire risk posed by charging the battery to full capacity.

25. By August 2020, General Motors was aware of at least 12 fires involving the Chevrolet Bolt. All of the aforementioned events which informed GENERAL MOTORS of the significant defects with the vehicle's battery prior to Plaintiff's September 6, 2020 acquisition of the subject vehicle.

26. At the time of Plaintiff's acquisition of the vehicle, GENERAL MOTORS' advertised the subject vehicle as a long range, affordable electric vehicle on its website. Moreover, at the time of acquisition, GENERAL MOTORS' dealership personnel assured Plaintiff of the long-range and safe nature of the vehicle.

27. In October 2020, the National Highway Safety Administration ("NHTSA") opened an investigation into the Chevrolet Bolt.

28. Defendant GENERAL MOTORS marketed the subject vehicle in false and misleading manner by advertising it as safe and function. The vehicle is neither safe nor functional for normal use due to the presence of defective and dangerous lithium-ion battery modules.

---

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

5

29. In the marketing materials for the 2020 Chevy Bolt, GENERAL MOTORS pictured the vehicle was being safe and capable of being charged indoors in Plaintiff's garage. These materials were prepared on behalf of GENERAL MOTORS and were justifiably reviewed and relied upon by Plaintiff prior to sale.

30. In 2021, Defendant GENERAL MOTORS issued a recall notice for the subject vehicle, stating that its batteries may ignite when nearing a full charge. Defendant GENERAL MOTORS warned Plaintiff that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight.

31. This battery defect presents a significant safety risk for Plaintiff because of the inherent risk that the batteries may ignite when nearing full charge. Due to the battery defect and risk of fire, Plaintiff is forced to make unforeseen accommodations and take precautions that interfere with their normal and expected use of the vehicle.

32. Plaintiff has suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein. The injury is in the form of anxiety, fear and emotional distress.

33. Defendant GENERAL MOTORS is one of the largest auto manufacturers in the world and is an industry leader in EV sales.

34. The safety and functionality of a vehicle is material to any consumer seeking to purchase that vehicle.

35. Defendant GENERAL MOTORS undertook a marketing strategy that advertises a competitive mileage capacity to convey that consumers, such as Plaintiff, are receiving an electric vehicle that is able to maintain battery life for long distances. Such representations constitute an express warranty regarding the vehicle's capabilities.

36. Based on Defendant's advertising and statements made by GENERAL MOTORS' dealership personnel, Plaintiff believed that they were purchasing a vehicle that was functional and safe.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

37. Plaintiff could not have reasonably understood or expected these representations to be untrue at the time of acquisition.

38. Plaintiff expected the vehicle to meet the stated long-range mileage capacity and battery usage.

39. Defendant GENERAL MOTORS issued a recall notice, stating that the batteries may ignite when nearing a full charge. Specifically, Defendant warned that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight due to the risk of fire.

40. Defendant GENERAL MOTORS falsely represents the safety of the vehicle as well as the expected battery usage and mileage capacity of the vehicle. The marketing material for the vehicle leads the reasonable consumer to believe they were purchasing an environmentally friendly vehicle that functions as a long-range vehicle, when, in reality they cannot charge the vehicles to their full battery capacity or drive the vehicle for long distances due to fear of falling below seventy (70) miles remaining on a single charge.

41. Plaintiff expected to use the vehicle without the fear of the vehicle igniting and causing serious bodily harm or death.

42. Plaintiff has been forced to make unforeseen accommodations and take precautions that interfere with their normal and expected use of the vehicle.

43. As a result, Plaintiff's use and enjoyment of the vehicle has been severely limited.

44. Plaintiff experiences a significant level of anxiety and worry regarding the safety of the vehicle.

45. Plaintiff would not have bought the vehicle if they had known it was neither safe nor functioned as advertised on the General Motor's website, based on Defendant's standards for normal use. Plaintiff would like to use the vehicle as intended without limitation.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

## FIRST CAUSE OF ACTION

*Violation of the Song-Beverly Act - Breach of Express Warranty (Against Defendant GENERAL MOTORS US, LLC)*

46.  PLAINTIFF realleges each and every paragraph set forth hereinabove, and hereby incorporates them by this reference as though fully set forth herein.

47.  The actions of GENERAL MOTORS in failing to perform the proper repairs, parts replacements, and/or adjustments to make the SUBJECT VEHICLE conform to the applicable express warranties constitute a breach of the express warranties that GENERAL MOTORS provided to PLAINTIFF, thereby breaching GENERAL MOTORS' obligations under the ACT.

48.  As the result of the actions of GENERAL MOTORS, pursuant to the provisions of the ACT, PLAINTIFF is and has been entitled to replacement of the SUBJECT VEHICLE, or restitution of the amount actually paid or payable under the contract, at PLAINTIFF's option, plus prejudgment interest thereon at the legal rate.

49. As a further result of the actions of GENERAL MOTORS, pursuant to the ACT, PLAINTIFF has sustained and is entitled to incidental damages in an amount yet to be determined, plus interest thereon at the legal rate.

50. As a further result of the actions of GENERAL MOTORS, pursuant to the ACT, PLAINTIFF has sustained and is entitled to consequential damages in an amount yet to be determined, plus interest thereon at the legal rate.

51. GENERAL MOTORS failed to perform the necessary repairs or service in a good and workmanlike manner.  The actions taken by GENERAL MOTORS was insufficient to make the SUBJECT VEHICLE conform to the express warranties and/or proper operational characteristics of like vehicles, all in violation of GENERAL MOTORS obligations under the ACT.

52. Although GENERAL MOTORS was unable to service or repair the SUBJECT VEHICLE to conform to the applicable express warranties after a reasonable number of attempts, GENERAL MOTORS failed to replace the SUBJECT VEHICLE or make restitution to PLAINTIFF in accordance with the ACT.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

8

53. GENERAL MOTORS knew of their obligations under the ACT but intentionally failed or declined to fulfill them.

54. The failure of GENERAL MOTORS to make the SUBJECT VEHICLE conform to the applicable express warranties was willful, justifying an award of a Civil Penalty as provided in the ACT in an amount not to exceed two (2) times PLAINTIFF's actual damages.

55. The failure of GENERAL MOTORS to replace the SUBJECT VEHICLE or make restitution to PLAINTIFF was willful, justifying an award of a civil penalty as provided in the ACT in an amount not to exceed two (2) times PLAINTIFF's actual damages.

56. GENERAL MOTORS knew of their obligations under the ACT, but, nevertheless, GENERAL MOTORS has had a reasonable number of attempts to repair, have failed to make the SUBJECT VEHICLE conform to its warranty and have failed to replace the SUBJECT VEHICLE or reimburse PLAINTIFF in amount equal to the purchase price, less PLAINTIFF's use of the SUBJECT VEHICLE, according to the mandates of the ACT. The failure of GENERAL MOTORS to refund the consideration paid and payable, or to replace the SUBJECT VEHJCLE with a similar vehicle free from defects, was willful and justifies an award of a Civil Penalty in an amount not to exceed two (2) times PLAINTIFF's actual damages, as provided in the ACT.

57. As a direct result of the actions of GENERAL MOTORS in pursuing PLAINTIFF's claim, it was necessary for PLAINTIFF to retain legal counsel. Pursuant to the ACT, PLAINTIFF is entitled to the recovery of attorneys' fees based upon actual time expended, and to the recovery of all costs and expenses reasonably incurred in pursuing this matter.

## SECOND CAUSE OF ACTION

*Violation of the Song-Beverly Act - Breach of Implied Warranty (Against Defendants GENERAL MOTORS US, LLC)*

58. PLAINTIFF realleges each and every paragraph set forth hereinabove, and hereby incorporates them by reference as though fully set forth at length herein.

59. At the time that GENERAL MOTORS distributed the SUBJECT VEHICLE into commerce,

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

and at the time that PLAINTIFF acquired the SUBJECT VEHICLE, GENERAL MOTORS impliedly warranted that the SUBJECT VEHICLE was merchantable as provided in the ACT.

60. The SUBJECT VEHICLE was not merchantable, as evidenced by the defects, non-conformities, maladjustments, and/or malfunctions as hereinabove alleged.

61. As the result of the actions of GENERAL MOTORS, PLAINTIFF has sustained damage in the amount actually paid or payable under the contract, plus prejudgment interest thereon at the legal rate. PLAINTIFF will seek leave to amend this Complaint to set forth the exact amount thereof when ascertained.

62. As a further result of the actions of Defendants, and each of them, PLAINTIFF has sustained incidental damages in an amount yet to be determined, plus interest thereon at the legal rate. PLAINTIFF will seek leave to amend this Complaint to set forth the exact amount of incidental damages when ascertained.

63. As a further result of the actions of GENERAL MOTORS, PLAINTIFF has sustained consequential damages in an amount yet to be determined, plus interest thereon at the legal rate. PLAINTIFF will seek leave to amend this Complaint to set forth the exact amount of consequential damages when ascertained.

64. The failure of GENERAL MOTORS, and each of them, to refund the consideration paid and payable, or to replace the SUBJECT VEHICLE with a similar vehicle free from defects, justifies an award of a civil penalty in an amount not to exceed two (2) times PLAINTIFF's actual damages, as provided in the ACT.

65. As a direct result of the actions of GENERAL MOTORS in pursuing PLAINTIFF's claim, it was necessary for PLAINTIFF to retain legal counsel. Pursuant to the ACT, PLAINTIFF is entitled to the recovery of attorneys' fees based upon actual time expended, and to the recovery of all costs and expenses reasonably incurred in pursuing this matter.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

10

## THIRD CAUSE OF ACTION

*Violation of the Song-Beverly Act - Section 1793.2 (Against Defendants GENERAL MOTORS US, LLC)*

66. PLAINTIFF incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

67. Pursuant to the Act, Civil Code section 1793.2, subdivision (a), a GENERAL MOTORS that sells consumer goods in California, for which it has made an express warranty, shall maintain service and repair facilities or designate and authorize independent service and repair facilities to carry out the terms of those warranties.

68. Pursuant to the Act, Civil Code section 1793.2, subdivision (b), when service and repair of goods is necessary because they do not conform to the applicable express warranties, service and repair shall be commenced within a reasonable time by the GENERAL MOTORS or its representative.

69. Pursuant to the Act, Civil Code section 1793.2, subdivision (b), goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days.

70. PLAINTIFF delivered the SUBJECT VEHICLE to GENERAL MOTORS and its authorized repair facilities for repair of the nonconformities.

71. Defendant GENERAL MOTORS, through its authorized repair facilities, was unable to conform the SUBJECT VEHICLE to the applicable express warranties within 30 days.

72. Notwithstanding PLAINTIFF's entitlement, GENERAL MOTORS has failed to either promptly replace or repurchase the SUBJECT VEHICLE in accordance with the Act.

73. By failure of Defendant GENERAL MOTORS to remedy the defects as alleged above, or to repurchase or replace the SUBJECT VEHICLE, Defendant GENERAL MOTORS is in breach of its obligations under the Act.

74. Under the Act, PLAINTIFF is entitled to damages pursuant to Civil Code section 1794, et seq.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

11

75.  PLAINTIFF is entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2714 and 2715, et seq.

76.  PLAINTIFF is entitled under the Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

77.  PLAINTIFF is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for GENERAL MOTORS 's willful failure to comply with its responsibilities under the Act.

78.  PLAINTIFF is entitled to prejudgment interest pursuant to Civil Code section 3287.

## FOURTH CAUSE OF ACTION

*Fraud (Against Defendants GENERAL MOTORS US, LLC)*

79.  PLAINTIFF incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

### Affirmative Misrepresentation

80.  Defendant GENERAL MOTORS willfully, falsely, and knowingly marketed the subject vehicle as having long range capability.  This marketing was made on GM's website, among other places.  The statements in the marketing were echoed by GM's dealership personnel at the time of sale who assured Plaintiff that the vehicle had a long-range and was safe. Through this deceptive marketing, Defendant communicated to Plaintiff that the vehicle was, among other things, environmentally friendly, safe and capable of long-range use.

81.   This was a material fact, as vehicle range is essential to the reasonable consumer's decision-making process in buying an electric vehicle. Defendant's representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during pro-longed use, resulting in a substantial reduction in the range capability of the vehicle. The vehicle is accordingly neither a long range vehicle nor is it safe.

---

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

82.    Defendant GENERAL MOTORS knew the representations were false and intended Plaintiff to rely on them.

83.    Plaintiff decided to buy the vehicle based in part on the false and misleading representations described herein. Defendant's mileage range advertisements were part of an extensive advertising campaign, and Plaintiff was exposed to the advertisements.

### Fraudulent Concealment: Mileage Range and Battery Safety

84.    Again, Defendant marketed the vehicle as having long range capability, which not only communicated that the vehicle was environmentally friendly, but also that it was capable of long-range use.

85.    The long-range was also the centerpiece of Defendant's marketing efforts and featured prominently in virtually every advertisement and consumer communication. Through dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues, Defendant pervasively and consistently represented that the vehicle had the best-in-class battery economy and touted its specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe.

86.    Defendant concealed and suppressed the fact that the vehicle could not achieve its expected range and safety due to the overheating battery. Instead, Plaintiff would only be able to charge the vehicle to 90% and use the vehicle only if the use did not exceed 70 miles remaining. This was a material fact about which the Defendant had knowledge, and which it concealed from Plaintiff to mislead them.

87.    Knowledge and information regarding the vehicle's defects were in the exclusive and superior possession of Defendant and their dealers, and were not provided to Plaintiff, who could not reasonably discover the defect through due diligence.

88.    Plaintiff did not know this fact and could not have discovered it through reasonably diligent investigation.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

13

89. Defendant had a duty to disclose that the battery in the vehicle is unsafe at the point of purchase because (1) Defendant had exclusive knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range, battery safety, and performance of the vehicle that were misleading without disclosure o the fact that the vehicle contained unsafe batteries that caused the vehicle to overheat and pose a risk of fire.

90. Defendant intended for Plaintiff to rely on these representations, as evidenced by Defendant's advertising which stresses the long range of each vehicle.

91. Plaintiff decided to buy the vehicle based in substantial part on the representations communicated through the Defendant's marketing material and the representations made by GM's dealership personnel.

92. Plaintiff has reasonably and detrimentally relied on Defendant's misrepresentations when purchasing the vehicle and, had they known the truth, they would not have purchased the vehicle or would have paid significantly less for the vehicle.

93. Therefore, as a direct and proximate result of Defendant's fraud, Plaintiff has suffered injury in fact, in the form of anxiety and fear.

## FIFTH CAUSE OF ACTION

*Violation of Business & Professions Code Section 17200 (Against Defendant GENERAL MOTORS US, LLC)*

94. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

95. Defendant advertised the vehicle as having a leading electric vehicle mileage capacity. However, the vehicle is not capable of meeting this mileage expectation, due to the battery condition. This misrepresentation is proven by Defendant's recall notice(s) sent out to Plaintiff warning them to not to exceed 90% of the mileage capability. Moreover, Plaintiff was informed not to allow the vehicles' charge to fall below 70 miles. Lastly, Plaintiff was warned not to park the vehicle indoors overnight due to concerns that the battery may catch on fire.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

14

96. These restrictions significantly infringe upon Plaintiff's use of the vehicle and present serious safety concerns. Had Plaintiff known of these safety issues and use limitations a month prior, he would not have purchased the vehicle.

97. The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A. "Unfair Prong"

98. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

99. Defendant's action of using a defective battery in the vehicle did not confer any benefit to Plaintiff.

100. Defendant's action of using a defective battery in the vehicle causes injuries to consumers, like Plaintiff, who cannot use their vehicle commensurate with their reasonable expectations.

101. Defendant's action of using a defective battery in the vehicle causes injuries to Plaintiff, who cannot park their vehicle commensurate with their reasonable expectations.

102. Defendant's action of using a defective battery in the vehicle causes injuries to Plaintiff, who ended up overpaying for the vehicle and receiving a quality of vehicle less than what they expected to receive.

103. Plaintiff cannot avoid any of the injuries caused by the defective battery in the vehicle.

104. Accordingly, the injuries caused by Defendant's use of the defective battery in the vehicle outweigh any benefits.

105. Here, Defendant's conduct of using the defective battery in the vehicle has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

15

106. As alleged herein, the misrepresentations by Defendant detailed above constitute an unfair practice that poses a threatening impact on competition within the meaning of California Business and Professions Code Section 17200.

107. Defendant's marketing of the vehicle, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

108. Defendant knew or should have known of their unfair conduct.

109. There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct alleged herein. Defendant could have used a battery appropriate for the vehicle.

110. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

111. Plaintiff has suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for this vehicle. Plaintiff would not have purchased the vehicle if they had known that the vehicle contained a defective, unsafe battery.

### B. "Fraudulent" Prong

112. California Business and Professions Code Section 17200, et seq., considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

113. Defendant's conduct of using a defective battery at the point of sale without notifying prospective consumers that the battery is unsafe, is likely to deceive members of the public.

114. Defendant's conduct of advertising the vehicle as being "long range" is fraudulent and likely to deceive members of the public.

115. Defendant's use of a defective battery, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

116. Defendant knew or should have known of their fraudulent conduct.

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

117. As alleged herein, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

118. Defendant had reasonably available alternatives to further its legitimate business interests other than the conduct described herein. Defendant could have used a battery appropriate for the quality and safety of the vehicle.

119. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

120. Plaintiff has suffered injury in fact and has lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for this vehicle. Plaintiff would not have purchased the vehicle if she had known that the battery unsafe and unfit for normal use.

### C. "Unlawful" Prong

121. Defendant's use of a defective battery, as alleged in the preceding paragraphs, violates California Business and Professions Code Section 17500, *et. seq.*

122. Defendant's use of a defective battery, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

123. Defendant knew or should have known of its unlawful conduct.

124. As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

125. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct alleged herein. Defendant could have used a battery appropriate for the quality and safety of the vehicle.

---

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

17

126. All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

127. Plaintiff has suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this vehicle unfit for normal use.

128. Plaintiff would like to use the vehicle as intended without limitation; however, Defendant has not yet even advised Plaintiff when the recall can be fixed, resulting in Plaintiff's significantly diminished use and enjoyment of the vehicle.

129. As a result of the business acts and practices described above, Plaintiff, pursuant to § 17203, is entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the vehicle as a result of the wrongful conduct of Defendant.

130. Pursuant to Civil Code § 3287(a), Plaintiff is entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff is entitled to interest in an amount according to proof.

131. Plaintiff has suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and their concealment of and failure to disclose material information. Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to Plaintiff any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 and 3345, and any other just and proper relief available under the California UCL.

### PRAYER FOR RELIEF

a.   For general, special and actual damages according to proof at trial;

b.   For rescission of the purchase contract and restitution of all monies expended;

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

18

c.  For compensatory damages; for diminution in value;

d.  For incidental and consequential damages according to proof at trial;

e.  For civil penalty in the amount of two times PLAINTIFF's actual, incidental, and consequential damages;

f.  For general, special and exemplary or punitive damages for Plaintiff's fear and anxiety, on the Fourth Cause of Action for fraud;

g.  Restitution and/or disgorgement in an amount to be determined at trial;

h.  For prejudgment interest at the legal rate of 10% per annum;

i.  For actual attorney's fees and costs of suit; and

j.  For such other and further relief as the Court deems just and proper under the circumstances.

Dated:  November 17, 2023                    **MARDEN LAW, INC.**

RYAN K. MARDEN
Attorney for Plaintiff
Beverly P. Craft

**COMPLAINT RE: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

19